UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENT MOHLMAN,

        Plaintiff,                       Case No. 12-10120

v.                                              Hon. Gerald E. Rosen

LONG BEACH MORTGAGE
EXTINCT LENDER
WASHINGTON MUTUAL BANK
EXTINCT LENDER
CHASE HOME LOAN AND
CRAIG J. KEANEY, SENIOR VICE
PRESIDENT

        Defendants.

_____/

OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on February 08, 2013

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

I. INTRODUCTION

This matter involving a mortgage of real property is presently before the Court on Defendants JPMorgan Chase Bank, N.A. ("Chase") and Craig J. Keaney's Motion to Dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Brent Mohlman has responded and the Defendants have replied. Having reviewed and considered the parties' motions, responses, and supporting exhibits, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the

1

resolution of this motion. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Defendants' motion based on the record as it presently exists, including the brief Defendants filed in support of their dispositive motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2005, Plaintiff borrowed $119,200.00 from Long Beach Mortgage Company ("Long Beach") and executed a promissory note ("Note") in which he contracted to repay the loan over 30 years at an interest rate between 8.950% and 14.950%. [*See* Defendants' Exhibit 1].[1] As security for the Note, Plaintiff granted a mortgage ("Mortgage") on property located at 19042 Irving, Livonia, Michigan 48152 in favor of Long Beach. [*See* Defendants' Exhibit 2]. Following the execution of the Mortgage, Washington Mutual Bank ("WaMu") acquired Long Beach along with its assets, including Plaintiff's Note and the Mortgage. On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d). [*See* Defendants' Exhibit 3]. On the same day, Chase purchased some of WaMu's assets from the FDIC pursuant to a Purchase and Assumption Agreement, thus acquiring WaMu's interest in the Note and Mortgage relevant to this case.[2]

---

[1] A document not formally incorporated by reference or attached to a complaint may be considered part of the pleadings when the document is referred to in the complaint and is central to the plaintiff's claim. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Thus, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Id.; see also QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) ("[I]if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit.").

[2] On February 3, 2012, Chase assigned the Mortgage to Deutsche Bank National Trust Company but remained servicer of the Mortgage. [*See* Defendants' Exhibit 4].

Plaintiff subsequently defaulted on his Mortgage account on September 1, 2010. [*See* Defendant's Exhibit 6]. No sheriff's sale has been held on the property.

Plaintiff filed his initial *pro se* complaint on December 21, 2011 in Wayne County Circuit Court, naming Long Beach, WaMu, Chase Home Loan, and Keaney as Defendants. Chase and Keaney—the proper Defendants in interest—timely removed the matter to this Court on diversity grounds on January 11, 2012, and subsequently filed a Motion for a More Definite Statement February 27, 2012. On March 27, 2012, Plaintiff filed a six-count Amended Complaint in which he seeks to quiet title and purports to raise claims for breach of contract, fraud, and unjust enrichment, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Real Estate Mortgage Investment Conduit ("REMIC") laws, the Uniform Commercial Code ("UCC"), the Truth-In-Lending Act ("TILA"), and the Servicer Performance Agreement.

Plaintiff's various counts revolve around assertions that the Mortgage was incorrectly placed in default and that Defendants' actions regarding the Mortgage were otherwise fraudulent. As relief, Plaintiff asks the Court to extinguish any interests Defendants may hold in the subject property, return the property to the Plaintiff, and award him $149,000.00 for "defending the fraudulent action." Defendants subsequently filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed a response and Defendants replied.

### III. DISCUSSION

A.   APPLICABLE STANDARDS

Fed. R. Civ. P. 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted . . . ." In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all

well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Yet "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ) (internal quotation marks, alterations, and citations omitted). Thus, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Further, a *pro se* complaint is to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted). But "[t]he leniency granted to pro se petitioners . . . is not boundless" and courts still demand basic pleading standards. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). In other words, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (internal citations omitted).

Applying the foregoing standards, the Court concludes that Defendants' Motion to Dismiss should be granted.

B.PLAINTIFF FAILS TO STATE VALID CLAIMS AS A MATTER OF LAW

1.*Plaintiff Fails to State Valid Claims Under the UCC, TILA, RESPA, and Common-Law Unjust Enrichment.*

The Court begins with those allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Plaintiff's Counts 4, 6, and portions of Count 3 fall into this category. Count 4 of Plaintiff's Amended Complaint alleges that "[t]he Principal is in violation of UCC & 201(39)." Count 6 alleges that "all Defendants have violated TILA" and "all Defendants received an[ ] unjust enrichment and made Plaintiff the injured party." Lastly, Count 3 alleges that "all Defendants violated [RESPA], 12 USC Sec 2601 et seq. and Regulation X, promulgated pursuant thereto, 24 C.F.R. Part 3500, including subsequent amendments." Given the absence of accompanying factual allegations, these four conclusory statements do not state a claim upon which relief may be granted. *See Iqbal,* 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, Plaintiffs' claims of violations of the UCC, TILA, RESPA,[3] and unjust enrichment[4] will be dismissed.

---

[3] Even if Plaintiff had pled a viable RESPA claim, the applicable statute of limitations would bar recovery. *See* 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought . . . within 3 years in the case of a violation of section 2605 . . . and 1 year in the case of a violation of section 2607 or 2608 . . . from the date of the occurrence of the violation"). Regardless of the RESPA subsection Plaintiff relies on, his action would be time-barred because Plaintiff's claims are focused on events that occurred at the closing in November 2005—more than six years ago.

[4] Plaintiff's unjust enrichment claim also fails because an express contract relating to the disputed subject matter exists between the parties. To recover for unjust enrichment under Michigan law, a plaintiff must establish that (1) the defendant received a benefit from the plaintiff and (2) an inequity would result if the defendant were permitted to retain the benefit without compensating the plaintiff. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). If both elements are established, "the law will imply a contract in order to prevent unjust enrichment." *Id.* But "a contract will be implied only if there is no express contract covering the same subject matter." *Id.* Here, Plaintiff executed two contracts that relate to the

5

2. *Plaintiff Has Failed to State a Claim for Breach of Contract.*

In Count 1 of Plaintiff's Amended Complaint, captioned "Breach of Contract," Plaintiff alleges that Defendants breached the Mortgage agreement by not accepting the payment he made in the amount of $573.79 on December 8, 2011. [Plaintiff's Exhibit B]. To recover for breach of contract under Michigan law, a plaintiff must prove (1) the existence of a valid contract, (2) the terms of the contract, (3) the conduct constituting breach by the defendant, and (4) damages. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999); *see also I.B. Mini-Mart II, Inc. v. JSC Corp.*, 296982, 2011 WL 1435978 at *2 (Mich. Ct. App. Apr. 14, 2011) ("The elements of a breach of contract action are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of a certain action by the defendant, (3) the defendant breached its obligation to perform, and (4) the plaintiff incurred damages as a result of the breach.").

Plaintiff's breach of contract claim is undermined by the fact that at the time he allegedly made the payment of $573.79, his account had been in default for more than 16 months. [Defendant's Exhibit 6]. According to an Acceleration Notice dated October 20, 2011, total monthly payments due on the Mortgage exceeded $14,000.00 at the time. *Id.* Under the terms of the Mortgage contract, the lender was permitted to "return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current." [Defendants' Exhibit 2, § 1]. Consequently, Defendants' refusal of Plaintiff's partial payment in the amount of $573.79 could not, without more, constitute a breach of contract. Because Plaintiff's allegations fail to

---

subject matter of this claim: the Note and the Mortgage. Because these documents govern the parties' rights and responsibilities respecting the loan—including the obligation to make monthly payments and the right to receive those payments—Plaintiff's unjust enrichment claim necessarily fails as a matter of law.

meet the threshold necessary to state a breach of contract claim, Count 1 will be dismissed in its entirety.

3.  *Plaintiff Has Failed to State a Claim Under the FDCPA.*

Count 2 of Plaintiff's Amended Complaint is titled "Violation of Contract Also Validation" and alleges that "Defendants failed to validate the debt upon request of the return of funds." While the exact nature of this claim is unclear, Plaintiff appears to accuse Defendants of violating the FDCPA, 15 U.S.C. § 1692 *et seq.*, by failing to "validate [his] debt."

The FDCPA applies only to "debt collectors," which are defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6) (emphasis added). Notably, "[a] bank that is a creditor *is not a debt collector* for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (emphasis added) (internal quotation marks and citations omitted); *see also Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1037 (N.D. Ill. 2005) ("Only debt collectors—not creditors—are subject to the provisions of the FDCPA.").

The pleadings show that, at all times relevant to Plaintiff's allegations, Chase was the mortgagee and had the right to receive mortgage payments—that is, Chase was Plaintiff's creditor. Although Chase later assigned the mortgage to Deutsche Bank National Trust Company, Chase remained the servicer of the mortgage. Indeed, whether Chase was the mortgagee or the servicer is inapposite to Plaintiff's ability to recover under the FDCPA.

"[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003); *see also Givens v. HSBC Mortg. Services*, 08-10985, 2008 WL 4190999 at *1 (E.D. Mich. Aug. 26, 2008) ("[I]t is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors."). A liberal review of Plaintiff's pleadings does not yield any factual allegations or legal arguments to the contrary. Accordingly, Plaintiff has failed to state claim against Chase under the provisions of FDCPA because Chase does not qualify as a debt collector.

Moreover, Plaintiff cannot recover against Defendant Craig Keaney because the FDCPA's exclusion from liability extends to a creditor's employees acting on the creditor's behalf. 15 U.S.C. § 1692a(6)(A). Here, Plaintiff's claim against Keaney was purportedly based on a letter—on Chase letterhead and signed by Keaney in his capacity as Senior Vice President—advising Plaintiff of a change in the account number for the Mortgage loan. [*See* Plaintiff's Exhibit A]. Even if that letter could be considered an attempt to collect a debt, Keaney would not be liable to Plaintiff under the FDCPA because he was acting as an officer or employee of Chase at the time. For that reason, Plaintiff has failed to state a FDCPA claim against Keaney, as well. The Court will therefore dismiss Count II of the Plaintiff's Amended Complaint.

4. *Plaintiff's Claims of Violations of the "Servicer Performance Agreement" and "REMIC" Tax Provisions Fail as a Matter of Law.*

In addition to an unsupported RESPA claim, Count 3 of Plaintiff's Amended Complaint also alleges violations of the "Servicer Performance Agreement" and "the REMIC LAW." In particular, Plaintiff alleges that Defendants' poor bookkeeping practices caused Defendants to wrongfully return Plaintiff's partial payment, but otherwise fails to provide further factual

support for this assertion. Count 5, captioned "Failure of Validation is a REMIC Violation," asserts that "[t]ax rules prohibit a REMIC from . . . buying and trading mortgages."

The Internal Revenue Service ("IRS") created REMICs to enable the bundling of residential mortgages into segregated asset pools, so individuals could invest in the asset-backed securities. *See* Internal Revenue Code ("IRC"), 26 U.S.C. §§ 860A-G. REMICs are "pass-through" entities, meaning that the investors are taxed on income received while the REMICS themselves are not taxed. *Id.* Notably, if a mortgage is transferred to a REMIC as part of a prohibited transaction, a private right of action does not arise automatically under the REMIC rules. *Id.* Additionally, violating the REMIC rules does not establish a defect in ownership of the mortgage. *See Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010) ("*Livonia I*") (ruling that an unfavorable tax consequence has no effect on the validity of an assignment).

As a threshold matter, Plaintiff fails to allege that his Mortgage was transferred into a REMIC. Even if Plaintiff had made such an allegation, his claim would fail because there is no private right of action available to challenge any perceived violation of 26 U.S.C. §§ 860A-G. Thus, to the extent Plaintiff challenges any alleged pooling and servicing agreement or assignment to a trust, he lacks standing to challenge the validity or any perceived violations of such transactions. *Livonia I*, 717 F. Supp. 2d at 748-749; *see also Luster v. Mortgage Elec. Registration Sys.,* 11-CV-14166, 2012 WL 124967 at *3 (E.D. Mich. Jan. 17, 2012) ("Because there is no right to sue under [the Home Affordable Modification Program], to the extent Plaintiffs allege a violation of [the Home Affordable Modification Program] or the 'Servicer Performance Agreement,' the claim fails as a matter of law."). Finally, even if Plaintiff had standing, his reference to "poor bookkeeping" is too vague and the Amended Complaint does not

9

state which provisions of the servicing agreement Defendants allegedly breached. *See Hudson v. Mortgage Elec. Registration Sys., Inc.*, 11-13077, 2011 WL 5553814 at *3 (E.D. Mich. Nov. 15, 2011) ("Plaintiff has not explained how Defendants' allegedly "poor bookkeeping" constituted a breach of the alleged contract, leaving this matter to speculation. The Court concludes that Plaintiff's claim for breach of contract is so lacking in facts that it must be dismissed.").

For these reasons, the Court will dismiss Plaintiff's counts regarding violations of the "Servicer Performance Agreement" and REMIC tax-code provisions because Plaintiff either lacks standing to plead, or has not pled, viable claims.

5.      *Plaintiff's Amended Complaint Fails to Plead Fraud with Specificity.*

Plaintiff also makes multiple attempts to raise fraud or silent fraud claims. [Amended Complaint ¶ 8, ¶ 12, ¶ 19]. For example, Plaintiff refers to "false and erroneous" documents, "certain bogus instruments which purported to divest plaintiff of all interest in the subject property," and Defendants' general "failure to disclose." [Amended Complaint ¶ 8].

Fed. R. Civ. Pro. 9(b), which governs pleading standards for fraud claims, requires that "the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit has "further interpreted Rule 9(b) to require that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks omitted); *see also Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (explaining that a fraud complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent"). Plaintiff's Amended Complaint allegations fail to meet these standards.

Plaintiff's complaint is also deficient under the Michigan standard for pleading fraud. To state a claim for fraud under Michigan law, Plaintiff must establish:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). The absence of any one of these elements is fatal to recovery. *Id*. Silent fraud contains the same elements as a general fraud claim, but requires "circumstances that establish a legal duty to make a disclosure." *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 412 (2000).

Many of Plaintiff's allegations relate to one type of fraud or another, but Plaintiff fails to plead any facts to support his contention. *See Easton v. Fannie Mae*, 12-CV-10663, 2012 WL 1931536 (E.D. Mich. May 29, 2012) ("Plaintiff's conclusory assertion that certain documents are bogus and that there was misrepresentation, silent fraud, and fraud is insufficient to state a claim for fraud"). For example, Plaintiff has failed to articulate how either Defendant knowingly made a material representation of the terms of the Mortgage agreement or assignment. Likewise, Plaintiff has not shown how he was injured by any assignment of the Mortgage, or that an assignment of the Mortgage in any way affected his rights under the Mortgage agreement. Because Plaintiff has failed to allege the elements of a claim for fraud or silent fraud with sufficient specificity, the Amended Complaint does not satisfy Fed. R. Civ. P. 9(b) or the requirements of Michigan common law. As a result, the Court will dismiss Plaintiff's fraud claims.

6.  *Plaintiff Fails to Allege the Necessary Elements to Maintain a Quiet Title Action.*

Lastly, Plaintiff fails to allege a valid quiet title claim. The relevant Michigan statute provides that:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

Mich. Comp. Laws § 600.2932(1). To state a claim for quiet title, a plaintiff must allege: (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim. MCR 3.411(B)(2). Further, "[t]he plaintiff must attach to the complaint . . . a statement of the title on which the pleader relies, showing from whom the title was obtained and the page and book where it appears of record." MCR 3.411(C)(2).

Here, Plaintiff failed to attach a copy of the record mortgage that is the basis of the quiet title claim, as required by MCR 3.411(C)(2). More importantly, Plaintiff does not allege any facts establishing the superiority of his claim. The Court will accordingly dismiss Plaintiff's demand to quiet title because Plaintiff has failed to state a valid claim.

## CONCLUSION

For all of the foregoing reasons, the Court concludes that Plaintiff has failed to state any plausible claim upon which relief can be granted. Therefore,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Dkt. # 16] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint is DISMISSED, in its entirety, with prejudice.

Let judgment be entered accordingly.


Dated:  February 8, 2013	s/Gerald E. Rosen	
	GERALD E. ROSEN
	CHIEF JUDGE, UNITED STATES DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Friday, February 8, 2013, by electronic and/or ordinary mail.

	s/Julie Owens	
	Case Manager, (313) 234-5135